UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARQUETTE TRANSPORTATION CO., INC.**          **CIVIL ACTION**

**versus**                                                              **No. 04-2386**

**ZURICH AMERICAN INSURANCE CO., et al.**          **SECTION: I/1**


## ORDER AND REASONS

Before the Court is a motion for summary judgment, filed by defendant Zurich American Insurance Company ("Zurich").[1] Also before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by third-party defendant Deutsch, Kerrigan & Stiles, L.L.P. ("DKS").[2] Plaintiff, Marquette Transportation Company, Inc. ("Marquette"), opposes both motions and, additionally, requests that sanctions be levied against both Zurich and DKS pursuant to Rule 11 of the Federal Rules of Civil Procedure.[3] For the following reasons, Zurich's motion for summary judgment is **GRANTED**, and DKS's motion is **DISMISSED** as moot.  Additionally, plaintiff's motion for sanctions is **DENIED**.

---

[1]Rec. Doc. No. 74

[2]Rec. Doc. No. 46.

[3]Rec. Doc. No. 70.

### *FACTUAL AND PROCEDURAL HISTORY*

The M/V Kay A. Eckstein ("Kay") was a steel hulled push boat originally constructed in 1973.  The Kay was owned and operated by Marquette, Bluegrass Marine, Inc., and Iowa Fleeting Service, Inc.  In 1999, the Kay's three engines were extensively rebuilt and renovated by Louisiana Machinery, a dealership located in Morgan City, Louisiana.  In addition, Quality Shipyards ("Quality") contracted with Marquette to perform other service work on the vessel. Marquette is organized under the laws of Delaware, with its principal place of business in Paducah, Kentucky.[4]

Zurich, having  issued an insurance policy to Marquette on December 1, 1997, was the insurer of the Kay.[5]  Zurich's policy provided hull insurance, as well as protection and indemnity insurance.  The "Protection and Indemnity" section of the policy states, in pertinent part, that "[t]he Assurer hereby undertakes to make good to the Assured . . . all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay."[6]  Zurich is organized under the laws of New York and is registered to do business in Kentucky.[7]

On May 23, 1999, the Kay suffered a catastrophic fire in her engine room and sank into the Mississippi River.[8]  Marquette and Zurich filed claims in this Court on May 22, 2000, against

---

[4]Rec. Doc. No. 1, p. 2.

[5]Rec. Doc. No. 1 ¶ 6.

[6]Rec. Doc. No. 1, Pl.'s Ex. A, p. 30.

[7]Rec. Doc. No. 1, p. 2.

[8]Zurich paid the owners the previously agreed upon value of the vessel, but balked at reimbursing any increase in value created by the prior service work.  Marquette and the other

Louisiana Machinery and Quality.  The parties sought damages for the defendants' negligent repair of the vessel.  Quality counterclaimed on July 19, 2000, arguing that it was entitled to indemnification from Marquette under their repair agreement for its expenses in defending Marquette's claim.  On August 7, 2002, this Court concluded a bench trial and denied the plaintiffs' action as well as the Quality counterclaim against Marquette.  No. 00-1504, 2002 U.S. Dist. LEXIS 27326 (E.D. La. Aug. 7, 2002).  After appeal to the United States Court of Appeals for the Fifth Circuit, the appellate court upheld the decision with respect to the plaintiffs' action, but reversed this Court's decision as to Quality's counterclaim and remanded the issue. *Marquette Transp. Co. v. La. Mach. Co.*, 367 F.3d 398 (5th Cir. 2004).  The Fifth Circuit later denied Zurich's petition for rehearing.  2004 U.S. App. LEXIS 9618 (5th Cir. May 17, 2004).  The parties eventually reached a settlement and the case was closed.[9]

The instant case arises out of disputes surrounding the indemnity provisions in Zurich's insurance policy.  Prior to trial in the lawsuit against Quality, Marquette contacted Zurich to confirm that Marquette's insurance policy with Zurich provided coverage for any indemnity claim that Quality might win.  On May 30, 2002, Marquette's general counsel faxed a letter to Joe Benson, an employee in Zurich's claims office, stating that "[i]f Zurich believes that there is any question whatsoever concerning coverage, we must have this answer before we proceed

---

boat owners sued, winning a $952,507.80 judgment in the United States District Court for the Western District of Kentucky.  *Bluegrass Marine, Inc. v. Zurich Am. Ins. Co.*, No. 00-0176 (W.D. Ky. Jul. 7, 2002).  The district court's award was subsequently upheld on appeal by the United States Court of Appeals for the Sixth Circuit. *Bluegrass Marine, Inc. v. Zurich Am. Ins. Co.*, 87 Fed. Appx. 493 (6th Cir. 2003).

[9]Civil Action 00-1504, Rec. Doc. No. 277.

forward with the June 10 trial."[10]  Benson replied by return fax, writing at the bottom of the letter, "We do cover under our insurance!"[11] The following year, as Quality's appeal was pending in the Fifth Circuit, counsel for Marquette, John Scialdone, wrote a letter to Zurich's counsel referring to this coverage in the context of the pending litigation.  Scialdone's letter on June 25, 2003, to Zurich's attorneys, Allen Campbell and Francis Barry of DKS, stated, "I also want to confirm that in light of Zurich's coverage position, you will be handling the reply."[12]

The controversy began when, responding to a June 23, 2004, letter from Scialdone, Campbell wrote that "no claim on behalf of Marquette Transportation has been made on the Quality Shipyards' counterclaim against Marquette Transportation in this matter."[13]  An e-mail from Campbell to Scialdone the next day reiterated that, while Marquette believed Zurich was prepared to indemnify any counterclaim award for Quality, Zurich's DKS lawyers were still unaware of any formal claim for such indemnification.[14]  Scialdone's response of June 25, 2005, set forth additional arguments and threatened this bad faith lawsuit.[15]  Campbell claims that he did not have notice of Benson's admission of coverage until receiving Scialdone's June 25,

---

[10]Rec. Doc. No. 1, Pl.'s Ex. E.

[11]Rec. Doc. No. 1, Pl.'s Ex. E.

[12]Rec. Doc. No. 1, Pl.'s Ex. F.

[13]Rec. Doc. No. 1, Pl.'s Ex. J.

[14]Rec. Doc. No. 1, Pl.'s Ex. K.

[15]Rec. Doc. No. 74, Def.'s Ex. 5, p. 2 ("If Zurich persists in their claim, my recommendation to Marquette will be to pursue a bad faith suit and regrettably a claim against Deutsch, Kerrigan.").

4

2005, letter.[16]  By this time, Benson had retired from his position with Zurich.[17]

The parties disagree as to the scope of Campbell and DKS's representation of Zurich. Zurich admits that its counsel handled briefing for the issues raised by Quality's indemnity claim in the Fifth Circuit.[18]  Zurich claims, however, that Campbell and DKS were only representing Zurich–and not Marquette–with respect to the Quality counterclaim.[19]  Defendant states that DKS was contemporaneously representing Marquette in a proceeding in the Middle District of Louisiana regarding a coverage dispute related to the sinking and, therefore, it could not ethically represent Zurich in any coverage dispute.[20]  Plaintiff claims, however, that DKS participated significantly in the representation of Marquette with respect to the Quality counterclaim.[21]  Plaintiff reasons that this representation shows that Zurich was aware of an obligation to indemnify Marquette.  Zurich contends that, while it did assist Marquette in the counterclaim litigation, its assistance was motivated strictly by the duty to protect Zurich's interest in the counterclaim.[22]

On August 20, 2004, Marquette filed its complaint against Zurich alleging breach of contract, breach of fiduciary duty, breach of the duty of care, and misrepresentation.  Marquette

---

[16]Rec. Doc. No. 74, p. 11, Def.'s Ex. 3, Aff. of Campbell, p. 43.

[17]Rec. Doc. No. 74, p. 11.

[18]Rec. Doc. No. 74, p. 5.

[19]Rec. Doc. No. 74, p. 7.

[20]Rec. Doc. No. 74, p. 8.

[21]Rec. Doc. No. 76, p. 4; Rec. Doc. No. 1, p. 9 ¶ 28.

[22]Rec. Doc. No. 74, p. 7.

prayed for compensatory and punitive damages as well as specific performance.  At a November 1, 2004, settlement conference, Zurich agreed to pay $500,000 to settle Quality's counterclaim, which disposed of the case remanded by the Fifth Circuit.[23]  Prior to this, the amount of the counterclaim had remained unliquidated.  On April 8, 2005, Zurich filed a third-party complaint against DKS for indemnity "solely in the event it is found liable for bad faith damages to plaintiff."[24]

On June 30, 2005, Zurich filed a motion to disqualify Scialdone as counsel for Marquette because of his close involvement in the facts at issue in the case.[25]  DKS filed a similar motion on July 27, 2005.[26]  On December 9, 2005, Scialdone moved to withdraw as counsel for Marquette;[27] the Court granted this request[28] and the related motions to disqualify were dismissed as moot[29].

On June 7, 2005, DKS filed its motion to dismiss seeking to have Marquette's claim for bad faith damages against Zurich dismissed as a matter of law.[30]  DKS claims that, as Zurich's third-party complaint is based solely on Marquette's main bad faith demand against Zurich, the

---

[23]Rec. Doc. No. 74, p. 12.

[24]Rec. Doc. No. 25, p. 2 ¶ 4.

[25]Rec. Doc. No. 55.

[26]Rec. Doc. No. 60.

[27]Rec. Doc. No. 93.

[28]Rec. Doc. No. 94.

[29]Rec. Doc. No. 95.

[30]Rec. Doc. No. 46.

6

third-party complaint should also be dismissed.  Marquette opposed the motion and filed for

sanctions against both DKS and Zurich pursuant to Rule 11 of the Federal Rules of Civil

Procedure.[31]  On October 25, 2005, Zurich filed a motion for partial summary judgment.[32]

Zurich asks the Court to find that:  (1) Zurich has discharged all of it obligations arising out of its

insurance policy; (2) Marquette has no claim pursuant to the Kentucky Unfair Claims Settlement

Practices Act; and (3) Marquette cannot state claims for punitive damages and attorney fees

pursuant to either Kentucky law or general maritime law.  Zurich also requests that the Court

dismiss Marquette's claim for indemnity as a general housekeeping matter.


*LAW AND ANALYSIS*

**I.  Standard of Law**

       The Court will consider third-party defendant DKS's motion to dismiss and Zurich's

partial motion for summary judgment simultaneously.  Rule 12(b) of the Federal Rules of Civil

Procedure requires that, where "matters outside the pleading are presented to and not excluded

by the court, the motion shall be treated as one for summary judgment and disposed of as

provided in Rule 56, and all parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56."  *See also Golizio v. Antonine Holding, Inc.*, No.

96-3142, 1997 U.S. Dist. LEXIS 1291, at *4 (E.D. La. Feb. 4, 1997) (Clement, J.) ("A court may

convert a motion to dismiss into a motion for summary judgment if the parties present the court

matters outside of the pleadings which are not excluded.") (citing *Morin v. Caire*, 77 F.3d 116,

---

[31]Rec. Doc. No. 70.

[32]Rec. Doc. No. 74.

118 (5th Cir. 1996)).[33]

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not

---

[33]Because the DKS motion to dismiss can be analyzed pursuant to a summary judgment standard, the Court finds no need to strike any of Marquette's exhibits as urged by DKS.  *See* Rec. Doc. No. 92, Reply Mem., pp. 3-4.

rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*

## II.  Failure to State a Claim Regarding Indemnity Coverage

Third-party defendant DKS first argues that Marquette fails to state a claim because the indemnity provision of the contract between plaintiff and defendant was never breached.[34] Similarly, Zurich argues that it insured Marquette under an indemnity policy and, therefore, Zurich was only required to reimburse Marquette for what Marquette paid to satisfy its legal obligations.  Zurich contends that, because Marquette had not paid Quality on its counterclaim prior to the events giving rise to this lawsuit, Zurich never breached the terms of the insurance contract.[35]  In its motion to dismiss, DKS also notes that, to enforce this indemnity policy against Zurich, Marquette was required to provide "proof of loss."[36]

The Fifth Circuit has stated that "[i]n the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law."  *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988).  Where a maritime contract contains a choice of law clause, the state law chosen by the parties will apply "'unless [1] the state has no substantial relationship to the parties or the transaction or [2] the state's law conflicts with the fundamental purposes of maritime law.'"  *Clayton Williams Energy,*

---

[34]Rec. Doc. No. 46, pp. 14-15.

[35]Rec. Doc. No. 74, pp. 14-15.  In this section, Zurich notes the related arguments by DKS and attempts to adopt them as its own.  The Court previously instructed Zurich that the memorandum in support of its motion for summary judgment "shall not incorporate by reference any arguments made in any previous brief or any arguments raised by another party in any other motion."  Rec. Doc. No. 59, p. 2.  Zurich's discussion of this issue, however, provides additional information than that included in DKS's brief, and it will be taken under advisement by the Court without sanction.

[36]Rec. Doc. No. 46, p. 4.

9

*Inc. v. Nat'l Union Fire Ins. Co. of La.*, No. 03-2980, 2004 U.S. Dist. LEXIS 22094, at *16 (E.D.

La. Nov. 1, 2004) (quoting *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1126 (5th Cir.

1992)) (internal quotations omitted).  The parties' briefs do not refer to any choice of law

provision in the contract.  The Court finds only two provisions in the contract that specifically

mention the application of a particular state's laws.[37]  Because neither applies to the indemnity

issue, federal maritime law will control this issue.[38]

    A distinction exists between indemnification policies that insure against liability and

those that insure against loss:

> In a liability contract, the insurer agrees to cover liability for damages. If the insured
> is liable, the insurance company must pay the damages. In an indemnity contract, by
> contrast, the insurer agrees to reimburse expenses to the insured that the insured is
> liable to pay and has paid. An indemnity policy covers only the insured's actual
> expenses.

*Cont'l Oil Co. v. Bonanza Corp.*, 677 F.2d 455, 459 (5th Cir. 1982); *see also Stuyvesant Ins. Co.*

*v. Nardelli*, 286 F.2d 600, 602 (5th Cir. 1961) ("[T]here is a clear distinction between contracts

---

[37]Rec. Doc. 1, Pl.'s Ex. A, p. 4 (requiring a claim for payment be brought within 12
months or within the time allowed by state law, whichever is shorter); Rec. Doc. 1, Pl.'s Ex. A,
p. 45 (agreeing that any claim against Zurich can be brought within the time allowed by the laws
of the state of New York).

[38]Plaintiff argues in its complaint that the Court should apply Kentucky law to its analysis
of the remedies available.  Compl., p. 4.  Plaintiff cites the Sixth Circuit's decision in
Marquette's previous coverage dispute with Zurich, which affirmed the district court's use of
Kentucky law.  *Bluegrass Marine*, 87 Fed. Appx. at 498.  Plaintiff states that this affirmance
requires that "Kentucky law . . . apply in connection with the remedies available under the
General Maritime Law as a matter of collateral estoppel."  Compl., p. 4.
    The well-reasoned decision of the Sixth Circuit, however, did not affirm the blanket
application of Kentucky law, but instead agreed with "the [district] court's application of
principles of Kentucky law in the absence of any rule of admiralty law to the contrary."
*Bluegrass Marine*, 87 Fed. Appx. at 498 (citation omitted).  The Court agrees that a comparison
between federal and Kentucky law is appropriate, as detailed *infra*.  The Sixth Circuit's holding
on this specific issue, however, has no collateral estoppel effect.

10

to indemnify against liability incurred and those to indemnify against loss, the term 'loss' generally referring to an actual payment by the indemnitee.") (quoting *Michel v. Am. Fire & Cas.*, 82 F.2d 583, 586 (5th Cir. 1936)).  Where a contract indemnifies a party against loss or damage, "the insured . . . may not bring an action against the insurance company until the insured has actually paid money on his liability."  *Id.*; *see also* 41 Am. Jur. 2d *Indemnity* § 43 (2004) ("A cause of action on a contract indemnifying against loss or damage does not arise until the indemnitee has actually incurred loss.").  Where a contract indemnifies a party against liability, however, "an action may be brought as soon as the liability becomes fixed."  41 Am. Jur. 2d *Indemnity* § 44 (2004).

In *Dicola v. American Steamship Owners Mutual Protection & Indemnity Assoc.*, the Second Circuit analyzed a contract provision providing indemnification to "the assured against any loss, damage or expense which the assured shall become liable to pay and shall pay."  158 F.3d 65, 68 (2d Cir. 1998).  The court found that "[t]he import of the emphasized wording is that [the plaintiff] must first pay any claims or judgments against it before obtaining indemnification."  *Id.*  The Fifth Circuit, in *Stuyvesant*, came to a similar conclusion after analyzing an indemnity clause that provided, if the insured party "shall become liable to pay and shall pay by way of damages to any other person," the insurance company "will pay the Assured or Charterers or the Surety, whichever shall have paid."  286 F.2d at 602.  The *Stuyvesant* court found that "[t]his language clearly provides that the insurer will not become liable under this section until [the insured] . . . has made some payment."  *Id.* (citing *Marine Transit Corp. v. Nw. Fire & Marine Ins. Co.*, 67 F.2d 544 (2d Cir. 1933)).

Marquette's policy provides indemnity against "all such loss and/or damage and/or

11

expense as [Marquette] shall as owners of the vessel named herein have become liable to pay and shall pay."[39]  The provision clearly evinces the intent to indemnify Marquette for "loss and/or damage and/or expense," not general, unpaid liability.  The clause emphasizes that the indemnification applies to sums that plaintiff has "become liable to pay and shall pay."  This language is virtually identical to that in the contracts considered by the Second and Fifth Circuits.

Marquette counters with a citation to *Jones v. Southern Marine & Aviation Underwriters, Inc.*, 739 F. Supp. 315 (S.D. Miss. 1988).  There, the district court similarly analyzed indemnity provisions in an insurance contract, including one that bound the insurance company "to indemnify the Assured against or pay on behalf of the Assured . . . [a]ll sums which the Assured shall by law . . . be liable to pay."  *Id.* at 321 (second ellipsis in original).  The court cited the "on behalf of" and "be liable to pay" language, finding that "coverage is not defined in terms of what the assured has already paid but in terms of what it is liable to pay."  *Id.*  The court concluded that "the underwriters contracted to provide coverage against liability, not merely to indemnify against loss actually paid by the insured."  *Id.*

Marquette's reference to *Jones*, however, is not persuasive because of the differences between the indemnity provision in that case and the one before the Court.  In *Jones*, the provision required the company to "indemnify . . . *or* pay on behalf" of the plaintiff those sums that plaintiff was "liable to pay."  In the Marquette policy, however, Zurich is only required to pay where Marquette has "become liable to pay *and shall pay*."  In addition, there is no language suggesting that any payments are required *on behalf of* Marquette, as the policy indicates in

---

[39]Rec. Doc. No. 1, Pl.'s Ex. A, p. 35.

*Jones*.  Marquette's contentions with regard to the plain language of the indemnity provision do not create a genuine issue of material fact suggesting that Zurich had any obligation to indemnify Marquette until plaintiff had actually paid out funds to settle the Quality counterclaim.

## III.  Waiver

Marquette cites *Beam v. State Farm Mutual Automobile Insurance Co.*, 269 F.2d 151 (6th Cir. 1959), to suggest that DKS's defense of the Quality counterclaim in some way waives Zurich's defenses with respect to the indemnity clause.[40]  The *Beam* case arose out of an automobile accident involving the plaintiff and a driver insured under a policy issued by the defendant State Farm.  *Id.* at 152.  During litigation, the insurance company defended the insured driver.  *Id.* at 154.  The court determined that, because State Farm had conducted this defense without any reservation of rights, the company could not later argue that the driver's actions had forfeited its indemnity coverage.  *Id.* at 155.  The court applied Kentucky law holding that "the conduct of the insurance carrier in taking control of litigation, with knowledge of the existence of the very ground of forfeiture which it later attempts to assert, and without reservation, constitutes an irrevocable waiver of the right to forfeit the indemnity contract upon that ground." *Id.* at 155.

The critical difference between *Beam* and the facts presented in this case is that while the defendant insurance company in *Beam* attempted to deny coverage for the plaintiff's claim entirely, here defendant only asserts that it was not the primary source of payment for the Quality counterclaim and, instead, it was only obligated to reimburse Marquette.  Indeed, Zurich eventually did pay the claim when it became a fixed and certain sum.  Unlike the defendant in

---

[40]Rec. Doc. No. 76, p. 13.

*Beam*, Zurich is not attempting to forfeit its indemnity obligation.  Marquette's citation to *Beam*,

therefore, does not support its waiver position.

## IV.  Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") and Federal Maritime Law

Zurich argues that the plaintiff's claims for punitive damages and attorney fees pursuant

to the KUCSPA are preempted by federal maritime law; further, defendant argues that plaintiff's

claims fail to meet the appropriate federal standard.[41]  DKS, alternately, argues that plaintiff's

claims do not meet the KUCSPA standards.[42]  Plaintiff disagrees, arguing that (1) the KUCSPA

is not preempted because the KUCSPA and general maritime law standards are analogous, (2) its

claims meet the standards under the KUCSPA, and (3) its complaint alleges claims pursuant to

general maritime law as well that meet the federal standard for such claims.[43]

The KUCSPA, Kentucky Revised Statutes section 304.12-230,[44] enumerates 15 unfair

claims settlement practices, and Kentucky courts have recognized a civil remedy for these unfair

practices pursuant to Ky. Rev. Stat.§ 466.070.[45]  *See State Farm Mut. Auto. Ins. Co. v. Reeder*,

763 S.W.2d 116, 118 (Ky. 1988), *cited in First Nat'l Bank v. Lustig*, No. 87-5488, 1993 U.S.

Dist. LEXIS 13754, at *6 n.5 (E.D. La. Sept. 23, 1993).  There can be no "technical" violations

---

[41]Rec. Doc. No. 74, pp. 16-23.

[42]Rec. Doc. No. 46, pp. 15-16.

[43]Rec. Doc. No. 76, pp. 6-12.

[44]Throughout the complaint, plaintiff erroneously refers to the KUCSPA as Ky. Rev. Stat. §§ 304.20-230 and 304.20-235.  Compl., pp. 1, 21 ¶ 74.  The correct citations are Ky. Rev. Stat. §§ 304.12-230 and 304.12-235.

[45]"Ky. Rev. Stat. § 466.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

14

of the KUCSPA; instead, "[b]efore the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).[46]

It is well-settled that a marine insurance contract is a marine contract within federal admiralty jurisdiction. *New Hampshire Ins. Co. v. Martech USA., Inc.*, 993 F.2d 1195, 1198 (5th Cir. 1993) (citation omitted); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 n.2 (5th Cir. 1991) (citations omitted). However, the regulation of marine insurance is, in most instances, properly left to the states. *Martech*, 993 F.2d at 1198 (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S. Ct. 368, 99 L. Ed. 2d 337 (1955); *5801 Assocs., Ltd. v. Cont'l Ins. Co.*, 983 F.2d 662 (5th Cir. 1993)). The Fifth Circuit has ruled that "'the interpretation of a contract of marine insurance is–in the absence of a specific and controlling federal rule–to be determined by reference to appropriate state law.'" *Albany Ins.*, 927 F.2d at 886 (quoting *Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985)). Therefore, state law governs a disputed issue pertaining to a marine insurance contract unless a controlling federal maritime rule applies to the issue. *See Albany Ins.*, 927 F.2d at 886; *Austin v.*

---

[46]To further explain this issue, the *Wittmer* court wrote:

This means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury. If there is such evidence, the jury should award consequential damages and may award punitive damages. The jury's decision as to whether to award punitive damages remains discretionary because the nature of punitive damages is such that the decision is always a matter within the jury's discretion.

864 S.W.2d at 890.

*Servac Shipping Line*, 794 F.2d 941, 948 (5th Cir. 1986).  "This presumption of state law is, by

now, 'axiomatic.'"  *Albany Ins.*, 927 F.2d at 886 (quoting *INA of Tex. v. Richard*, 800 F.2d 1379,

1380 (5th Cir. 1986)).

 The Fifth Circuit has instituted a three-factor test for determining whether a federal

maritime rule preempts a state law requiring this Court to ask:  "(1) whether the federal maritime

rule constitutes 'entrenched federal precedent,'; (2) whether the state has a substantial and

legitimate interest in the application of its law; [and] (3) whether the state's rule is materially

different from the federal maritime rule."  *Albany Ins.*, 927 F.2d at 886-87 (internal quotations

and citations omitted); *see also Martech*, 993 F.2d at 1198; *5801 Assocs.*, 983 F.2d at 665.

These factors, though, are instructive rather than dispositive.  *Albany Ins.*, 927 F.2d at 887.

### A.  Punitive Damages

In order to prove a cause of action under the KUCSPA, a party must first show "evidence

sufficient to warrant punitive damages . . . . intentional misconduct or reckless disregard of the

rights of an insured or a claimant."  *Wittmer*, 864 S.W.2d at 890; *see also Federal Kemper Ins.

Co. v. Hornback Ky.*, 711 S.W.2d 844, 848 (1986) ("[A]n award of punitive damages depends

first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to

conclude that there was conduct that is outrageous, because of the defendant's evil motive or his

reckless indifference to the rights of others.")  A plaintiff bringing a KUCSPA bad faith claim

must prove three elements in order to prevail against an insurance company for refusing, in bad

faith, to pay the insured's claim:  (1) the insurer must be obligated to pay the claim under the

terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the

claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for

denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer*, 864 S.W.2d at 890 (quoting *Federal Kemper*, 711 S.W.2d at 846-47 (Leibson, J., dissenting)).[47]

Before punitive damages may be recovered under federal maritime law, "gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct," is required. *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989) (quoting *In Complaint of Merry Shipping Inc.*, 650 F.2d 622, 626 (5th Cir. 1981) (internal quotations omitted).

Taking the *Albany* factors in reverse order, the Court does not find that KUCSPA is preempted by federal maritime law with respect to Marquette's claim for punitive damages. Kentucky's standard, requiring evidence of "intentional misconduct or reckless disregard of the rights of an insured," is not materially different from the federal standard. The Court also finds that Kentucky has a legitimate interest in the application of its laws to a contract binding parties with significant relations to the state.[48] Finally, while the federal maritime standard reflects

---

[47]Kentucky statutory law also provides an avenue for recovering punitive damages. Ky. Rev. Stat. § 411.184(2) (2004) ("A plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice."). The *Wittmer* court, however, refused to apply this statute in light of the applicable common law right of action for punitive damages, writing that it "could not interpret Ky. Rev. Stat. § 411.184 to destroy a cause of action for punitive damages otherwise appropriate without fatally impaling upon jural rights guaranteed by the Kentucky Constitution." 864 S.W.2d at 890; *see also Thomas v. Grange Mut. Cas. Co.*, Nos. 03-449, 03-505, 2004 Ky. App. LEXIS 163, at *19 (Ky. Ct. App. Jun. 4, 2004) (citing *Wittmer* to hold that a bad faith claim for punitive damages did not require plaintiff to prove oppression or fraud pursuant to Ky. Rev. Stat. § 411.184(2)); *Williams v. Wilson, Ky.*, 972 S.W.2d 260, 265-69 (1998) (holding that, to the extent § 411-184 requires a plaintiff to prove malice to recover punitive damages, it is unconstitutional).

[48]*See, e.g.*, *Albany Ins.*, 927 F.2d at 888-87 (acknowledging a state's "material interest in ensuring that marine insurance underwriters do not invalidate the insurance protections of [its] citizens ").

significant support in Fifth Circuit case law, the similarity of the Kentucky law and the state's interest in applying the same outweigh any need to apply the albeit analogous federal language. *Cf. DeRossi v. Nat'l Loss Mgmt., Nat'l Marine Underwriters, Inc.*, 328 F. Supp. 2d 283, 288-89 (D. Conn. 2004) (holding the punitive damages standard under the Connecticut unfair trade practices law, requiring such damages appropriate where the unfair practice "(1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers," inconsistent with the federal maritime law standard); *Geftman v. Boat Owners Ass'n of the U.S.*, No. 02-1461-18, 2003 U.S. Dist LEXIS 24861, at *13 (D.S.C. Dec. 2, 2003) (holding the "unwillfulness" element of the punitive damages and attorney fee standard in the state's unfair trade practices law inconsistent with the admiralty standard); *Delta Marine, Inc. v. Whaley*, 813 F. Supp. 414, 417 (E.D.N.C. 1993) (holding state law preempted by admiralty punitive damages standard because state law "did not require a showing of gross negligence, actual malice, or reckless or wanton misconduct").

Marquette, however, has not alleged sufficient facts to meet this KUCSPA standard and create a genuine issue of material fact with regard to its claim for punitive damages. The elements of the *Wittmer* test will be discussed *seriatim*.

*1. Was Zurich obligated to pay under the indemnity provision?*

As stated earlier, Marquette has not shown evidence sufficient to create a genuine issue of material fact with respect to Zurich's obligation to satisfy the Quality counterclaim before Marquette made any payments. Zurich was obligated, however, to reimburse Marquette for its losses.

*2. Did Zurich lack a reasonable basis for denying the claim?*

Zurich argues that it never denied the claim; instead, in accordance with the indemnity provision, it paid the Quality counterclaim only when it had become a liquidated claim at the time of the settlement.[49]  Marquette counters that, because Benson previously confirmed Zurich's coverage of the Quality counterclaim, and because Zurich significantly contributed to the counterclaim defense, the later correspondence from DKS attorneys constituted Zurich's denial of its indemnity obligations.[50]

Three factors militate in favor of a finding that Zurich's actions were reasonable.  First, as discussed above, Marquette has not shown that Zurich actually had any obligation that it may have denied; the indemnity provision did not require Zurich to make any payments until Marquette had incurred some loss.  Next, Marquette has not brought any evidence to show that Zurich ever denied coverage; instead, the Zurich and DKS communications appear only to have questioned whether Marquette made a formal proof of loss.  Last, there was no formal claim made on Zurich, as required by the contract.  Under the "General Conditions and/or Limitations" subtitle of the "Indemnity and Protection" section, the contract states that "[t]he Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured."[51]  Without this formal proof of loss, Zurich's obligations to indemnify Marquette remained inchoate.  Marquette does not suggest that it made a formal claim and, therefore, it fails to allege facts sufficient to create a genuine issue of

---

[49]Rec. Doc. No. 74, p. 21.

[50]Rec. Doc. No. 76, pp. 13-19.

[51]Rec. Doc. No. 1, Pl.'s Ex. A, p. 36.

material fact with respect to the second prong of the *Wittmer* test.

Plaintiff attempts to create an issue of material fact by using the communications between Zurich, DKS, and Marquette to show that Zurich acted in bad faith.[52]  Marquette's allegations rely on the response of Zurich's underwriter, Joe Benson, to a query by Marquette's general counsel regarding coverage of the Quality counterclaim.  Benson, two years before the Quality counterclaim would finally become due, wrote that Zurich would provide coverage for the counterclaim.  Marquette bases its bad faith claims on this statement, a single sentence scrawled in the bottom margin of the Marquette attorney's original letter.[53]  Marquette goes on to complain that, because of Benson's admission in June, 2002, Zurich acted in bad faith in June, 2004, when DKS lawyers and Benson denied that a formal claim for indemnity had been made.

Marquette's reliance on Benson's admission of coverage, however, is misplaced; it is not sufficient to create a genuine issue of material fact with respect to Zurich's bad faith.  Benson's statement–"We do cover under our insurance!"–did not change the terms of the indemnity contract.  Nor was this statement detailed enough to provide a basis for Marquette to conclude that Zurich would pay the counterclaim directly, rather than reimburse Marquette as provided for in the contract.  At the time of Benson's statement, the Quality counterclaim was still not a fixed sum and would not become fixed until over two years later.  Further, Benson's statement was not sufficient to provide formal notice to Zurich of the indemnity claim:  the indemnity provision required that "proper proofs of loss" be given before Zurich would be liable to Marquette for any claim.

---

[52]Rec. Doc. No. 76, pp. 19-23.

[53]Rec. Doc. No. 1, Pl.'s Ex. E.

*3. Did Zurich know there was no reasonable basis for denying the claim or act with reckless disregard for whether such a basis existed?*

Because Zurich had no obligation to indemnify Marquette before the Quality counterclaim had materialized and a formal claim had been tendered, the Court finds that Marquette cannot show the intent or recklessness needed to create a genuine issue of material fact with respect to this final prong of the *Wittmer* test.  Marquette has failed to produce sufficient evidence with respect to its KUCSPA claim for punitive damages, and the court finds that summary judgment is appropriate on this issue.

Alternately, even if this Court were to apply general maritime law with respect to whether a sufficient claim for punitive damages has been made, this Court would reject the same. Plaintiff similarly fails to meet the requirements for a claim pursuant to general maritime law for the reasons stated above.

**B.  Attorney Fees**

Marquette also brings claims under Kentucky law for attorney fees.  For KUCSPA claims, attorney fees are available pursuant to Ky. Rev. Stat. § 304.12-235(3), which requires that, "[i]f an insurer fails to settle a claim within the time prescribed . . . and the delay was without reasonable foundation, the insured person or health care provider shall be entitled to be reimbursed for his reasonable attorney's fees incurred."  *See, e.g.*, *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 455 (Ky. 1997) (applying the "reasonable foundation" standard).

 Federal courts, however, apply the "American Rule," which establishes that attorney fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."  *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114, 72 L. Ed. 2d 511, 515 (1982) (quoting *Fleischmann Distilling Corp. v. Maier*

*Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 1407, 18 L. Ed. 2d 475, 478 (1967)); *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 356 (5th Cir. 1996) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)); *see also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 635, 121 S. Ct. 1835, 1856-57, 149 L. Ed. 2d 855, 882-83 (2001) (noting that 42 U.S.C. § 1988 permits fee awards under various civil rights laws); *Cunningham v. McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985) ("The Civil Rights Attorney's Fees Awards Act of 1976 . . . amending 42 U.S.C. § 1988, was passed to overrule the holding in *Alyeska* . . . that the so-called 'American Rule' barred an award of counsel fees to successful litigants, *insofar as it applied to civil rights cases*.") (emphasis added).

The United States Supreme Court has recognized certain exceptions to the general American Rule bar.  *Summit Valley*, 456 U.S. at 721, 102 S. Ct. at 2114-15, 72 L. Ed. 2d at 515-16.  In particular, the Court's decision in *Alyeska* permits the award of attorney's fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" 421 U.S. at 258-59, 95 S. Ct. at 1622, 44 L. Ed. 2d at 154 (quoting *F.D. Rich Co., Inc. v. United States for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S. Ct. 2157, 2165, 40 L. Ed. 2d 703, 714 (1974)).[54]  The Fifth Circuit has observed that "[t]he bad-faith exception to the American rule . . .

---

[54]Additionally, 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

(emphasis added).

. punishes abuses of the litigation process."  *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1503 (5th Cir. 1995), *quoted in Galveston County Navigation*, 92 F.3d at 358 (holding that a district court's finding that counsel "have not acted in an equitable manner" was not enough to support an attorney fee award).

Again taking the *Albany* factors in reverse order, the Court finds that the federal standard for attorney fees preempts Kentucky law.  The federal standard is materially different from Kentucky's law, setting a much higher bar to sustain a fee award than Kentucky's "without reasonable foundation" standard.  Kentucky does have an interest in regulating attorney fees in cases concerning parties with significant ties to the state.  The firmly entrenched status of the "American Rule" in federal jurisprudence, however, weighs in favor of applying the federal rule.  Despite Kentucky's interest in its own fee standard, the Court–recognizing the material difference between the federal and Kentucky standards as well as the federal rule's solid foundation in case law–will apply the federal standard.

As with its punitive damages argument, Marquette has failed to bring evidence sufficient to create a genuine issue of material fact with regard to attorney fees.  Marquette has not shown that Zurich had any duty to pay the Quality counterclaim at any time before Marquette itself had paid.  Nor has Marquette brought any evidence to show that, when Zurich did satisfy the counterclaim during the November 1, 2004, settlement, it was acting in bad faith or in a vexatious, wanton, or oppressive fashion.  The Court finds that plaintiff has failed to create a genuine issue of material fact on the issue of attorney fees and, therefore, summary judgment is

also appropriate with regard to this issue.[55]

## V.  Sanctions

In retort, plaintiff suggests that the Court should impose sanctions on Zurich and DKS pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure for presenting claims to the Court that are frivolous or not warranted by the law.[56]  Plaintiff is apparently requesting that the Court impose sanctions on its own initiative, as envisioned by Rule 11(c)(1)(B).[57]  The Fifth Circuit has held that "in order to impose sanctions against an attorney under its inherent power, a

---

[55]Ky. Rev. Stat. § 304.12-235(1) provides:

All claims arising under the terms of any contract of insurance shall be paid to the named insured person or health care provider not more than thirty (30) days from the date upon which notice and proof of claim, in the substance and form required by the terms of the policy, are furnished the insurer.

As discussed *supra*, Marquette has failed to provide evidence that it furnished proper notice and proof of claim as required by its insurance policy.  This failure provides another ground for dismissal of Marquette's claims pursuant to this statute.

[56]Rec. Doc. No. 70, pp. 8-9.

[57]To the extent that Marquette's suggestion that the Court impose sanctions can be characterized as its own request, that request is improper.  As DKS notes in its reply memorandum, Marquette has failed to comply with the requirements of Rule 11.  *See* Rec. Doc. No. 90.  A motion for sanctions under Rule 11 "shall be made separately from other motions or requests."  Fed. R. Civ. P. 11(c)(1)(A).  "It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged . . . claim . . . is not withdrawn or appropriately corrected."  Plaintiff's request for sanctions was not set out in a separate motion, but was combined with its response to DKS's motion to dismiss.  Further, Marquette has not complied with the "safe harbor" provision of the Rule by serving its request for sanctions 21 days before filing with the Court.  Plaintiff's response memorandum indicates that it was served on DKS and Zurich on August 23, 2005, only three days before it was filed with the Court.  "The 'safe harbor' provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention.  The plain language of the rule indicates that this notice and opportunity prior to filling is mandatory."  *Elliott*, 64 F.3d at 216.  For these additional reasons, plaintiff's request will be denied.

court must make a specific finding that the attorney acted in 'bad faith.'" *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).  Because the Court has found no evidence of bad faith on behalf of Zurich, DKS, or their respective attorneys, the Court declines to exercise its power to assess sanctions.

In conclusion, the Court finds that Marquette has not raised a genuine issue of material fact with regard to its claim for indemnity and its attendant bad faith claims, its claims for punitive damages and attorney fees, and its request for sanctions against Zurich and DKS.  The Court does not reach the question of whether Marquette has any remaining claims relating to the Quality counterclaim or any other issue not addressed in this opinion.  Considering the extensive litigation already endured by the parties and this Court related to a dispute now more than six years old, the Court is hopeful that the parties will be able to resolve the remaining claims amicably.

Accordingly,

**IT IS ORDERED** that defendant's motion for partial summary judgment is **GRANTED. IT IS FURTHER ORDERED** that, because Zurich is no longer liable for bad faith damages, third-party defendant DKS is **DISMISSED** from the case and its motion to dismiss is **DISMISSED AS MOOT**.  **IT IS FURTHER ORDERED** that plaintiff's motion for sanctions is **DENIED**.

New Orleans, Louisiana, March __13th__, 2006.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**